Welles, J.
 

 — The defence interposed at the trial was excluded solely on the ground, that *- the license to the Woodworths, to cut the trees and timber, from which the lumber in question was manufactured, was not in writing. We are to assume, that a paroi license was proved, because evidence was given on that subject, sufficient to have been submitted to a jury, and which would have probably justified a finding of the fact, that a paroi license had been given, and that the timber had been taken in pursuance of it. It appears by the bill of exception, that after the evidence had been given, his honor, the justice, then decided, that the facts thus proved, going to show a paroi license,
 
 *266
 
 were not admissible, on the ground, that nothing but a license in writing would constitute-a sufficient defence, „ and thereupon excluded the said evidence; *to J which decision the counsel for the defendant excepted. The title to the land upon which the trees grew and stood, from which the lumber was made, was admitted to have been in the plaintiffs. The Woodworths held the land under a written contract, with one of the plaintiffs, for its purchase, in which they covenanted not to cut, or suffer to. be cut, for sale, any timber from the land, without the consent of the vendor first had and obtained in writing.
 

 The question to be decided is, whether, after the parties have mutually agreed to depart from the provisions of the written agreement, as to what kind of consent should justify the vendees in cutting the timber, or how such consent should be manifested, the latter shall be protected in what they have done under the new agreement, after the same has been completely executed, without any dissent or revocation on the part of the vendors.
 

 There are some provisions in the contract upon which, perhaps, it might be argued, that the vendees had an implied consent of the vendors to enter and make improvements, and cut timber for the purpose of improving the land. The prohibition is of cutting timber
 
 for sale;
 
 the evidence is clear, that the timber was in fact Cut for such purpose. The case, however, in my judgment, is no stronger for thp plaintiffs, than if the contract had been simply for the sale of the land, with a covenant to convey upon full payment of the purchase-money, and containing no provision whatever, either express or implied, authorizing the vendees to take possession, or to cut timber for any purpose. Under such a contract the vendees wuuld be trespassers, by cutting timber or entering upon the land; nor would an express, unqualified provision in the contract, prohibiting such acts, superadd anything
 
 *267
 
 to the rights, liabilities or obligations of either party. The most that can be said of a provision that the vendees should not cut timber without a written consent is, that they might do it, with such consent; and, probably, no one would contend, that they would be trespassers, with a written consent, in either of the supposed cases. In the further - consideration of the question, therefore, the provisions of the contract, in reference *to ^ ^gg the consent to cut timber for sale, and those from *- which an implied right to take possession and cut timber for the purpose of improving the premises might be claimed, may be laid out of view; and the question treated as if it arose upon a contract simply for the sale of the land, with a covenant to convey upon payment of the purchase-money.
 

 What, then, is the effect, in such a case, of a paroi agreement or license by the vendor to the vendee, to enter and cut timber of a particular description or quantity, and to take the same away and convert it to his own use, after such license has been acted on and completely performed and executed ? In answering this question, it is important to understand and bear in mind, the distinction between a license, and an easement or right of permanent occupancy of the land. Chancellor Kent, in his commentaries (3 Kent’s Com. 452), says, “the modern cases distinguish between an easement and a license; a claim for an easement must be founded upon grant, by deed or writing, or upon prescription, which supposes one; for it is a permanent interest in another’s land, with a right at all times to enter and enjoy it; but a license is an authority to do a particular act, or series of acts, upon another’s land, without possessing any interest therein; it is founded in personal confidence, and is not assignable.” The learned commentator adds, that “this distinction between a privilege or easement, carrying an interest in land, and requiring a writing, within the statute of frauds, to sup
 
 *268
 
 port it, and a license, which may be by paroi, is quite subtle, and it becomes quite difficult, in some of the cases, to discern a substantial difference between them.” He then refers to several decided cases, and concludes as follows: “ The decision in
 
 Cook
 
 v.
 
 Stearns,
 
 narrows the limits assigned to a paroi license, while on the other hand, the cases of
 
 Ricker
 
 v.
 
 Kelly,
 
 and
 
 Clement
 
 v.
 
 Durgin,
 
 seem to approach the more questionable doctrine in
 
 Wood
 
 v.
 
 Lake.”
 
 In the latter case (Sayer 3), it was held, that a paroi agreement for the liberty to stack coal upon any part of the close of another for seven years, was valid.
 

 The case of
 
 Cook
 
 v.
 
 Stearns
 
 (11 Mass. 533) was trespass * 0n7
 
 Square clausum fregit,
 
 and digging up the soil of -* the plaintiff’s land; the defendant justified the trespass, under a paroi license or consent from a former owner of the plaintiff’s land, to enter and dig, &c., for the purpose of repairing a mill-dam, a part of which was on the plaintiff’s close, claiming a right, under such paroi consent of the former owner, to enter upon the plaintiff’s land, and of digging up the soil, whenever necessary for the purpose of repairing the dam and bank. The court overruled the defence; and Parker, C. J., in giving the opinion of the court, says: “A license is, technically, an authority to do some one act, or a series of acts, on the land of another, without passing any estate in the' land; such as a license to hunt in another’s land, or
 
 cut down a certain nwmber of trees.
 
 These are held to be revocable, when executory, unless a definite time is fixed, but irrevocable, when executed.”
 

 In the case of
 
 Mumford
 
 v.
 
 Whitney
 
 (15 Wend. 380), which contains an able review of many of the conflicting cases, Savage, C. J., cites with approbation the case of
 
 Cook
 
 v.
 
 Stearns (supra),
 
 and the views of Chancellor Kent above extracted: he says, “much of the discrepancy may have arisen from the different ideas attached to the word
 
 license.
 
 If we understand it as Chancellor
 
 *269
 
 Kent defines it, it seems to me, there can be no difficulty; it is an authority to do a particular act upon another’s land; is founded in personal confidence, and is not assignable. For example, A. agrees with B., that B. may hunt or fish on A.’s land; A. thereby gives B. a license for that purpose. This gives B. no interest in the land; he cannot authorize any other person to go upon the land; it is a personal privilege to B. alone. If, after A. has given his consent, and before B. has entered upon his land, A. changes his mind, he has a right to do, and forbid B. from entering upon his land for the specified purpose. The license is thus far executory, and may be revoked at pleasure; if B. afterwards enters, he is a trespasser. If, however, B. enters, before any revocation of the license, the license is then executed, and it is not competent for A. to revoke it, and make *B. a ^ ^ ^gg trespasser. This doctrine is applicable only to *- the temporary occupation of land, and confers no right nor interest in the land.”
 

 The learned chief justice then proceeds to illustrate and show what is an easement, or a right which can only be acquired by a grant or prescription, as contra-distinguished from a mere license; from which, and the other authorities I have referred to, it appears, that the marked and leading distinctions between them are, that in the former, there is a permanent interest in the land, for some specified period, amounting to an estate in the land, which is assignable, is irrevocable, and gives a right at all times to enter and remain in possession, during its continuance; while the latter is a mere authority to enter upon the land of another, for a temporary purpose, and to do a particular act, or series of acts, upon the land, is revocable at pleasure, before acted on, is not assignable, and gives no estate or interest in the land upon which the act or acts are to be done. Another incident of a technical license is, that no consideration is necessary to its validity as such; it should, therefore,
 
 *270
 
 on that ground, be distinguished from an agreement, the breach of which would entitle the party injured to an action, or other legal remedy. And yet cases may, I think, be imagined, of transactions, which, at common law, would be valid agreements, creating substantial vested rights, but which, by force of the statute of frauds, would only have the effect (so far as respects the right of either party to enforce their execution) of a mere license, and where the question of consideration would, therefore, become immaterial. None of the cases, protecting parties in acts, otherwise unauthorized or unlawful, on the ground of an unrevoked executed license, treat the question of consideration as of any importance. A plea of license, by way of justification of a trespass, never states a consideration; this must be so, as a license is nothing but an authority, revocable at pleasure by the person granting it, which could not be the case, in respect to a valid agreement upon sufficient consideration.
 

 Applying the foregoing principles to the case under * 289 1 cons^era^on’ seems *° me) to follow, that the -* consent or agreement of the vendor, allowing the Woodworths to enter upon the land, and cut and take off the timber in question, can have no other effect than that of a strict license, which the plaintiffs might have revoked or countermanded, at any time before it was executed, and that the Woodworths, and those claiming under them, must be protected in whatever thay have done in pursuance thereof, before the same was countermanded.
 

 It was insisted upon the argument on behalf of the respondents, that the consent under which the defendant claims that the timber was taken, to be good, even as a license, must have been in writing; and that being only by paroi, it was void by the statute of frauds. If it had been in writing, as a license merely, it would have been revocable, before execution, equally with a paroi license
 
 *271
 
 If an agreement in writing, expressing a sufficient consideration, it would have lost its character of a mere license, and there would be no necessity for invoking the doctrine applicable to an executed license, in its support, or for the protection of acts done under it, for it could not have been revoked, would have been assignable, and an action might have been sustained for its violation, and would have been effectual and enforceable at all events. Among the great number of cases to be found upon the subject, there is not one that I have met with, where this objection has been allowed to prevail, although there are many where it has been urged and overruled.
 

 In the case of
 
 Cook
 
 v.
 
 Stearns,
 
 before cited, Ch. J. Parker puts the very case of a license to cut down trees on the land of another, as being revocable, while it remains executory, but irrevocable, when executed; and in the late case of
 
 Miller
 
 v.
 
 Auburn and Syracuse Railroad Co.
 
 (6 Hill 61), it was held, that the right of permanently occupying one’s own land, in such a manner as to deprive an adjoining owner of an easement, cannot be acquired under a paroi license, but was nevertheless a justification for acts done under it, while unrevoked; and that, accordingly, in an action against the defendant, for building and continuing a railroad on a street in front of the plaintiff’s house, *so as to obstruct ^ ^ his right of egress and regress, it was held, that L the defendant might give, evidence of a paroi license from the plaintiff to build the road, and thus defeat the claim for all damages sustained, while the license remained unrevoked.
 

 The rule is one having its foundation in justice and good morals, and is very much like that applicable to estoppels
 
 in pais;
 
 a different one would be productive of great injustice, and would open a door for fraud, imposition and bad faith. If the Woodworths went on, in good faith, under a license which only lacked validity, according to the ruling at the trial, for the reason that it
 
 *272
 
 was not in writing, and expended their money and labor in converting the standing timber into personal property, and manufactured it into lumber, thus, probably, quadrupling its value, without objection or dissent on the part of the vendor, the law is not, in my judgment, obnoxious to the imputation of allowing the plaintiffs, then, for the first time, to come in with their dissent, and reclaim the property, or recover its enhanced value, in an action of trover or otherwise.
 

 Suppose, in this case, the trees cut had been black walnut or mahogany, and the Woodworths had manufactured them into the finest articles of furniture, thereby increasing their value a hundred-fold, and had sold the furniture, in different parcels, in a distant market, the plaintiffs standing by and knowing it all, and not countermanding the license; can it be, that they would be permitted to reclaim the property, or recover its enhanced value, wherever they could find and identify it ? Such a proposition shocks the conscience, by its bare statement; and yet it is true, if the doctrine of the cuurt below is to be sustained. Upon the same principle, ii T take an apple from my neighbor’s tree, by his consent, I am liable in an action of trespass for the value of the apple, unless I have his license
 
 in writing.
 

 If it should be said, that the same unjust consequences are liable to follow, in case of a. tortious taking of the timber, without or against the consent of the owner of the land, the answer is obvious; the owner, in such case, never consented to part with his property, and though . innocent persons might suffer, he has *done ^vi J nothing to contribute to their misfortunes, and it is a case where the maxim,
 
 caveat emptor,
 
 would apply in all its force. The rule in such case is necessarily a severe one, and should never be applied in favor of one whose acts and declarations were designed and calculated to induce the line of conduct on the part of another,, which the former seeks to repudiate.
 

 
 *273
 
 There are several answers to the point made upon the argument by the respondent’s counsel, that the license was void for want of consideration. 1. It has been shown, that a consideration was not necessary, and does not necessarily enter into the contemplation of a license, which can only be set up in justification of acts done in pursuance of it. 2. No such objection was raised upon the trial, and the rejection of the evidence going to show a license, was put upon the sole ground that nothing but a written license would constitute a defence. If the point had been raised, or regarded as material by the learned justice before whom the cause was tried, the defendant might have offered further evidence on the subject, which it would have been within the discretion of the justice to receive. Under the ruling, it would have been the merest supererogation, not to say disrespect to the court, for the defendant to have given proof of a consideration. The law of the case at the circuit was, that no paroi license, however well supported by a consideration, or however completely performed and executed, would constitute a defence. If that was the law of the land, the defence was properly excluded; if not, the cause was not tried upon proper principles, and should be sent back for a new trial.
 

 There was no written opinion in the court below, on giving the judgment for the plaintiffs, from which the present appeal was taken, but there had been a previous trial, resulting in a verdict for the defendant, which had been set aside and a new trial granted, on the ground, among others, that the evidence of the paroi license was improperly received. Upon that occasion, there was an opinion given, in which the learned justice who wrote it assumes that the license was without consideration and merely gratuitous. A distinction is drawn between an action *of trespass against the Woodworths, for „ ^ cutting the timber, and trover to recover its *- value, against the defendant deriving title from them;
 
 *274
 
 thus, by implication, at least, admitting that the license would justify the Woodworths in the entry and cutting down the timber, but denying, that it conferred any title to the timber, after it was cut down or taken away, or to the lumber into which it was manufactured, either upon thorn or the defendant. It is argued, that as the trees were a part of the real estate, the title to which could not pass except by writing; and that while the case of
 
 Green
 
 v.
 
 Armstrong
 
 (1 Denio 550) continues to be the law of the land, and the identity of the trees can be traced to the lumber, and the contract has not been performed by the payment of the purchase-money, the title to the property continues in the original owner, and he may reclaim it, in its altered state.
 

 In the case of
 
 Green
 
 v.
 
 Armstrong,
 
 the plaintiff declared for the breach of a verbal contract, by which the defendant sold to the plaintiffs certain trees standing on the defendant’s land, at a certain specified price per saw-log, the trees to be paid for, when cut and carried away, the plaintiff to be at liberty to cut and take them away, at any time within twenty years; averring that a part of the timber had been cut, taken away and paid for) and that the defendant had forbidden the plaintiff to take away any more of the trees. The plaintiff had judgment, which was very properly reversed, on the ground, that the contract, not being in writing, was void within the statute of frauds. It will be seen, that the case did not, and could not, embrace the question of an executed license, and I confess myself entirely at fault, in perceiving its application to the case at bar. It was, undoubtedly, a good authority to prove that the standing trees were a part of the land upon which they stood and were rooted, and that a paroi contract for the sale of them, while it remained executory, was within the statute. I suppose it was referred- to for that purpose. This, however, is admitted, in the preceding discussion of the present case. If the plaintiffs had revoked the
 
 *275
 
 license, before it was executed, or, on supposition of a paroi ^agreement, upon a good consideration, if ^gg they had rescinded it, before it had been exe- *- outed, the Woodworths would, undoubtedly, have been wrongdoers, in cutting the timber, and, of course, would have acquired no title to it, and could have conferred none upon the defendant.
 

 The point of the argument of the learned justice is, as I understand it, that admitting the license to have the effect of protecting the Woodworths against an action of trespass for entering and cutting down the trees, still, it goes no further, and does not change the title to the timber, which remains in the owners of the land, notwithstanding any mutations of form or possession which it might afterwards undergo. But it seems to me, that must depend upon what the license was, in fact, intended by the parties to be. If it was merely to sever the trees from the land, and leave them there, I admit, no title would pass; if, on the contrary, it was, as the witness states, to cut the timber and draw it off to a'saw-mill, on another lot, for the purpose of stocking the mill, it is impossible to suppose, without importing an absurdity, and stultifying the parties, that they did not intend that the timber, at least, after it was taken away, was to be the property of the Woodworths. The license, undoubtedly, referred to the whole series of actá by the Woodworths, of entering upon the land, cutting the timber, taking it away and manufacturing it into lumber as their own. If it was good for a part, it was good for the whole; and I can perceive no more difficulty, upon principle, in sustaining the transaction, after its consummation, than in upholding a paroi gift
 
 inter vivas,
 
 after a full delivery of the thing given.
 

 Again, upon cutting down the trees and severing them from the land, they became personal estate; and ' if the object and scope of the license was what I have supposed, it attached to them in that character, and the
 
 *276
 
 appropriation of them by the Woodworths to their own use and possession, in the manner stated in the case, transferred the title, as effectually, in my judgment, as it would have ■ been done; provided the plaintiffs *themselves ■ had cut them down and given -* them the, Woodworths.
 

 In every aspect in which I have been able to view the cáse,-1 am constrained to believe a substantial error has been commited in the court below, in holding that the license, to be-available to the defendant, should have been in writing. The judgment appealed from should be reversed, and a new trial ordered.