By the Court.—Sedgwick, Ch. J.
The arrangement between plaintiff’s assignor, Dash, and the defendant, on which the plaintiff founds his claim, was, according to the findings of facts in the case, as follows:
Dash entered into a written contract to buy No. 38 Great Jones street. Afterwards the defendant called on Dash and stated that he could sell the premises at a profit of $1,000, the purchaser to stand in the place of Dash. Dash thereupon stated that he would accept said offer. Thereupon the defendant said that he thought the price too low, that he could get a profit or advance for it, from another person, and then offered to pay said Dash $500 for a half interest in the property and bear half of any loss and take half of any profit that might be realized on any sale of the *129 property ; said Dash thereupon stated that he would give said Read a half interest in the property and would not require him to pay $500 or any other sum therefor, and thereupon it was verbally agreed between said Dash and the defendant, that they would become equally and jointly interested in the premises and would divide any profit and bear any loss that might arise therefrom equally. After-wards Dash carried out his contract of purchase, accepted a deed of the premises, made to him as grantee, paid the consideration and went into possession. Afterwards Dash and the firm of which he was a member, becoming insolvent, made to the plaintiff a general assignment of all their property, for the benefit of creditors; afterwards Dash, at the instance of the plaintiff, had an interview with the defendant; the defendant said it would be impossible to sell the premises at private sale ; that they could only be disposed of at public auction-sale; thereupon, the plaintiff requested, with the knowledge and consent of the defendant, a firm of real estate auctioneers, in which the defendant was a partner, to sell the - premises at public auction, and accordingly any where sold for $12,800. The defendant was present at the sale. Afterwards the plaintiff as assignee rendered to the defendant an account that set out the payments, expenses and disbursements, in buying, keeping and selling the property ; that said account was accepted, approved of and ratified by the defendant; that it showed a loss of $4,388.13, of which by the verbal agreement the defendant was to bear one half; that defendant repeatedly thereafter promised to pay the plaintiff his proportion of the loss as shown by the account; that at a certain time after the defendant offered to pay the plaintiff in settlement of his share of loss $500, but plaintiff refused to accept.
A sentence from the opinion of the court, and which is supported by the evidence, makes, it may be, the intention of the parties more definite. It is: “ I have found that there was an oral agreement between the plaintiff’s assignor, Mr. Dash, and the defendant, that he, Dash, should pay *130 the consideration for, and take the title to the premises, known as No. 38 Great Jones street, and that they, said Dash and the defendant, should share the profits and the losses on the transaction equally.”
The court found as a conclusion of law that the verbal agreement between Dash and the defendant, was void by the statute of frauds, and that no interest or estate in the real property was created or vested in the defendant.
The learned counsel for the defendant argues that the agreement, found by the court to have been made, was an oral agreement for the sale of, or for the creation of a trust in lands (2 R. S. 135, §§ 6-8). Under section 6, it seems to be clear that there having been no writing or deed, no estate or interest was or has been created in favor of the defendant. But it is to be observed that' it was no part of the arrangement that the defendant should have any estate or interest in the land itself, so far as legal title or right to possession was concerned. Nor was under the same section any trust created or declared in prcesenti, unless there was one by act or operation of law.
If, on the other hand, the words of the parties be looked at, not as a creating or declaring, an estate or interest, but as an executory agreement for the future creation, the matter is not clear, under the case of Burrell v. Root (40 N. Y. 496).
Sugden, in his treatise on the law of vendors, says: [123] § 2, after commenting on the section that provided against the creation of estates and interests, except by writing : “ This, however, of itself would not have prevented all the evils which the act intended to avoid, for although actual estates could not be created, yet still parol agreements might have been entered into respecting the future creation of them.” They are, therefore, valid, excepting upon the contingencies, specified in the statute when they shall be invalid.
An agreement to sell or transfer, is not an agreement to buy or take. Section 8 provides that every contract for the sale of any lands or any interest in lands, shall be void *131 unless the contract, or some note or memorandum thereof, expressing the consideration, be in writing, and be subscribed by the party by whom the sale is to be made. It will have been noticed that this does not avoid an oral agreement by a purchaser to buy or take an estate or interest in land.
In Burrell 8. Root, the defendant, upon the conveyance land by him to plaintiff, had signed and sealed an agreement, that at the expiration of four years, if the plaintiff should be disposed to sell him the land at six dollars an acre, he would purchase it. At the end of the time, the plaintiff, in a letter that referred to the defendant’s agreement, said that he had elected “ to accept your offer, and shall be pleased to execute the necessary transfer of title, &c.” The defendant refused to accept a deed that was tendered, or to pay tbe price.
Judge Grover, giving the opinion, said that the evidence showed that the plaintiff was not bound to sell. It was manifest that no contract to sell, valid by the statute, had been made, -and, indeed, the plaintiff had made no verbal agreement to sell. Of the contract upon which the action was brought, the opinion said : “ It is not a contract for the sale of the land or any interest therein, but an obligation assumed by the defendant, for a sufficient consideration, to purchase in future at a specified price, in case the plaintiff shall elect to sell. The signature of the plaintiff to such a paper would be but an idle ceremony. Section 8 applies only to contracts where some obligation is assumed by the owner, and not at all to contracts like the present.” After the case of McWhorter v. McMahan (10 Paige, 386), ‘which was cited in Cammeyer v. United German Lutheran Churches (2 Sandf. Ch. 186); Chancellor Walworth, in National Fire Insurance Co. v. Loomis (11 Paige, 431), said: “It may be proper to remark, however, that the present statute of frauds does not require the written contract or memorandum of a sale to be signed by the *132 purchaser, but it is required to be subscribed by the party by whom the sale is to be made (2 R. S. 135 § 8).”
If, however, section 8 does not embrace an agreement to purchase or take, then it is not invalid or void because not written, for irrespective of the statute, it could have been enforced.
To enforce such an agreement it would be necessary to show a consideration. A sufficient consideration would be, under Justice v. Lang, a verbal promise to sell or transfer, although such promise could not be enforced. Justice v. Lang (52 N. Y. 323), declined to review the determination of the same case in 42 N. Y. 493, that a promise void in law, made by one party, was a good consideration for a promise made, by the other.
My opinion, however, is that the parties did not intend, by their verbal arrangement, that Dash should transfer to the defendant, any interest in real estate or the rents and profits thereof, within the meaning of the statute. It was their intention that all the interests in the land as real property should remain in Dash, and that none of them should be transferred to the defendant. It is necessary to refer further to the facts to perceive what the real agreement of the parties was.
Dash was to pay the consideration of the deed to him. The defendant was not to pay any part of it, excepting so far as that might result from ah accounting under the agreement to bear half of the possible loss.
The plaintiff rendered to the defendant an account respecting the premises. The court found that the defendant promised to pay one half of the loss that the account disclosed. It may, therefore, be taken that the things done by Dash, as shown by the account, were such as the parties to the agreement intended should be done. The money paid by Dash as the consideration, the interest on mortgage, the taxes, the repairs, also paid by him, were charged, and' the rents, and the amount received' on the final sale, were credited, and one half of the loss was charged to each. There was nothing in this inconsistent *133 with Dash’s having and retaining all the title and all the rents, so long as either remained real estate. When the land was turned into money on a sale, the money ceased to be real estate, and an agreement as to it was not within the statute. The same is true of rents, after they issue from the land and become personal property in the hands of the owner. Furthermore, it was ' not the meaning of the parties that the defendant should have any title to or specific interest in the proceeds after they had become personal property, but the various amounts were to be used for items in account.
Against this view are the words of the parties, as found by the court, that they would be and “become jointly and equally interested in the property.” Evidently these are not terms of art, intended to describe any estate or defined interest in land, and as it was the intention of the parties that Dash should remain as owner of the whole fee and recipient of all the rents, it cannot be said that by these words they intended that Dash should make any transfer to the defendant. The joint and equal interest meant, was such as would exist solely in the agreement made by words immediately following those that have been stated, viz: “and would divide any profit or bear any loss that might arise therefrom equally.” That is, the interest intended by the parties was not an estate or an interest as described in section 8.
The principle used to show that the parties did not contract for any interest in real estate, is that which is used in respect of things growing in the soil or attached to the soil.
Kent, in a note (3 Comm. 45), says of cases of agreements as to timber, crops, roots, &c. : “The rule to be drawn from the cases would seem to be that if the subject. matter of the contract was not to be severed and delivered as a chattel, but was a right in the soil to grow and bring the same to maturity and a right of entry to cut and take it, was a part of the contract, the case falls within the 4th section of the (English) statute of frauds. Bub when the *134 agreement was for the tree, grass or crop, when severed from the soil, and which were growing at the time ; or if the contract was for the annual produce of cultivation and labor, or for emblements at maturity, and to'be taken by entry, the case falls within the 17th section of the (English) statute. This is the same as saying thalt it is not within the 8th section of our statute, and we have no concern with the statute relating to personal property.
In Frear v. Hardenbergh (5 Johns. 272), the defendant was the owner of land, on which the plaintiff had tortiously entered and made improvements, such as building. The defendant had commenced an action of ejectment, in which he was finally successful. During its progress he verbally agreed with the plaintiff to pay him for the improvements. Under ordinary circumstances these improvements were real estate. The court held the promise not binding, as it had no consideration, but was of the opinion that it was not void by the statute of frauds. The opinion was “ that it was nota contractor sale of land, tenements or hereditaments or any interest in or concerning them, but related to the labor alone, which had been bestowed on land under the denomination of improvements.” “The contract in such a case does not go to take from the promisor any land or any interest in or concerning it. The statute could have in view to avoid such agreements in relation to land asserted in parol, only when some interest was to be acquired in the land itself, and not such as were collateral and by which no kind of interest was to be gained by the agreement in the land.” A reference to the case, shows that this was not said on the ground that a man cannot acquire an interest in land which is already his own. The ground of these views is that the contract was in respect of matter, before they entered into and became real estate. The case was cited in Benedict v. Beebe (11 Johns. 145); Lower v. Winters (7 Cow. 263).
In Fraser v. Child (4 E. D. Smith, 153), the facts are correctly stated in the head-note. “ When A., having purchased an interest in real estate, sold under executions *135 against a third party, and being unable to make payment at the required time, obtained the money from B. and assigned to him the sheriff’s certificate, held, that a parol agreement that the purchase should be a joint affair, and that (the property being found incumbered by a prior judgment, a dower interest and a mortgage) B. should take proceedings to make title by obtaining an assignment of the mortgage and reselling under foreclosure, A. promising to pay half of any deficiency or Iqss which might finally result, was a valid contract, not within the statute of frauds. The court considered that it was not a contract to create or surrender any interest in land. Judge Itobaham used this illustration: “If A., the owner of a lot of ground, procured from B. $1,000, and conveyed the lot to him on the parol understanding that if B. sold, and it did not bring $1,000, he would pay the deficiency, there would be no doubt that B. could recover such deficiency, and that the statute of frauds would not apply.” It is manifest that if a promise to pay a difference between a certain sum and another sum that shall be the amount of the proceeds of land, in case the latter shall be the lesser, is a valid promise, then there is sufficient consideration for it, in a promise to pay the difference if there shall be a gain.
In Pierrepont v. Barnard (6 N. Y. 279), there were standing trees on land of plaintiff. The plaintiff verbally authorized or licensed the defendant to go upon the land, and cut the trees and sell the lumber, all of which he did. The court said that the entry and cutting down were by license, which did not need a writing under the statute, and that they thereupon became personal estate, and the verbal arrangement of the parties attached to them in that character.
Other illustrations might be found in the cases of agreements made verbally in respect of fixtures, which but for the agreement would be real estate. The agreements may prevent their being real estate or may refer to them as detached from the realty, and in either case an interest *136 in land is not dealt in (Dubois v. Kelly, 10 B. S. C. R. 496).
Such an arrangement as the present one could not be used for an evasion of the statute, the fact being that it could be consummated without transferring to the defendant any interest in real estate, and his not receiving any interest being immaterial to the accounting and its result.
That an agreement to bear losses and share profits that may result from the disposition of property, will not of itself create an interest in the property is shown in Coleman v. Eyre (45 N. Y. 38). The plaintiff was interested to the extent of one fourth in the profits or losses of a shipment of coffee, undertaken by him jointly with other parties. It will be observed, therefore, that he was possessed of a chose in action in respect of the adventure. While the adventure was on foot, it was mutually, agreed between the plaintiff and the defendant that the defendant should have one-half interest in the plaintiff, one-fourth interest in the adventure. In other words, the agreement was that in consideration of the plaintiff’s promising to account to the defendant for half of the profits in case of success, the defendant undertook to bear half of the loss in the contrary event. It was a clear case of mutual promises, and the obligation of each party was a good consideration for that of the other. The -opinion said: “ The agreement was not within the statute of frauds. It was not an agreement for the sale of any personal property or chose in action, but an executory agreement whereby one party undertook to beaf one part of a possible loss in consideration of a share of an.expected profit.”
I am of opinion that the present agreement of the defendant was, for the same reasons, valid and supported by consideration.
There was an objection made that the agreement was non-assignable, and that, therefore, the plaintiff took no interest in it under the general assignment made by Dash and his firm. Devlin v. Mayor (63 N. Y. 8), shows, *137 however, that such an executory contract is assignable, and this is implied in Coleman v. Eyre, already cited.
The judgment should be reversed, and a new trial ordered, with costs of appeal to abide event.
Freedman and O’Gorman, JJ., concur.