charged here), the judgment of the Court of Appeals can never be modified or interfered with, stayed, or obstructed. It is the last word in the law. It cannot be questioned; it must be obeyed.

[2] At the time O'Brien went to trial in the two cases, he had full knowledge of the settlement, if there was any settlement, of both causes of action. Had he attempted to interpose the defense of settlement, there is no doubt that he would have been permitted to do so. He went through all the various stages of the litigation without opening his mouth on the subject. Even if the alleged settlement was ever valid and could ever have been enforced, O'Brien's laches in asserting his rights is wholly intolerable. To indulge such tactics as he has employed is to trifle with the courts and with the administration of justice.

All three of the orders granting a stay of the execution of the judgments of the Court of Appeals should be reversed, with $10 costs in one case. All concur.

(85 Misc. Rep. 341)

### FIRST NAT. BANK OF CITY OF BROOKLYN v. LA FAYETTE TRUST CO. et al.

(Supreme Court, Special Term, Kings County. April, 1914.)

1. FRAUDS, STATUTE OF (§ 144*)—FRAUD—ESTOPPEL.

A brokerage corporation was indebted to a trust company on insufficiently secured loans. A stockholder of the corporation, who was also an officer of the trust company and a member of the executive committee which authorized the loans, assigned a mortgage to the trust company as collateral security therefor. When the loans became due, the trust company closed its doors for want of cash, and the superintendent of banks reported that it was solvent, counting the mortgage in the assets, and the assignor frequently stated that the mortgage was held as an asset, and with his consent the bank examiner included it as an asset in passing on the company's solvency, and the assignor permitted notices to be sent to all depositors, assuring them of the company's solvency, and requesting them to permit their deposits to remain for a stated period. He also permitted a committee to be appointed to reopen the institution on the basis of its solvency and ownership of the mortgage, and permitted the resumption of business and the receipt of additional deposits. Subsequently the trust company became insolvent. *Held*, that the representative of the deceased assignor was estopped from claiming that the assignment of the mortgage was void under the statute of frauds because collateral to the assignor's oral promise to pay the debts of the brokerage corporation.

[Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. § 351; Dec. Dig. § 144.*]

2. FRAUDS, STATUTE OF (§ 144*)—FRAUD—ESTOPPEL.

The doctrine of estoppel will apply to prevent the statute of frauds from being used to work a fraud.

[Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. § 351; Dec. Dig. § 144.*]

Action by the First National Bank of the City of Brooklyn against the La Fayette Trust Company and another. Judgment for defendants.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Samuel H. Coombs and Robert H. Wilson, both of Brooklyn, for plaintiff.

Frank M. Patterson and Almet Reed Latson, both of New York City, for defendants.

CRANE, J. [1] The plaintiff has no greater right to the bond and mortgage in question than John G. Jenkins, Sr., would have if he were alive. For the allowing reasons John G. Jenkins, Sr., would not be able to maintain this action: First. The assignment of the bond and mortgage to the Jenkins Trust Company was not made to secure a promise to pay the debt of the corporation of Frank & J. G. Jenkins, Jr., nor is the claim of the defendant to possession of these securities based upon an attempt to enforce any such agreement. John G. Jenkins, Sr., was a stockholder in the corporation of Frank & J. G. Jenkins, Jr., which owed the Jenkins Trust Company $557,000, insufficiently secured. This indebtedness consisted of demand loans for which additional security was required on October 25, 1907, when the Jenkins Trust Company closed its doors for want of cash. John G. Jenkins, Sr., assigned the bond and mortgage in question to the Jenkins Trust Company by proper assignment in writing, and delivered to it the original bond and mortgage as the additional security. This pledge or assignment was an executed transaction, and stands for what it is worth, viz., collateral security for the indebtedness of the Frank & J. G. Jenkins, Jr., Company, and which the trust company can resort to for payment. No claim is made against John G. Jenkins, Sr., or his estate upon any promise whatever to answer for the debts of another. This case, therefore, is not within the statute of frauds. Second. Assuming that the bond and mortgage were collateral to an oral agreement to pay the debts of Frank & J. G. Jenkins, Jr., Company, and thus coming within the statute of frauds, it may be a serious question whether or not the direct benefit of John G. Jenkins, Sr., was not such a consideration passing to him as to bring the facts within the rulings of Ackley v. Parmenter, 98 N. Y. 425, 50 Am. Rep. 693; White v. Rintoul, 108 N. Y. 222, 15 N. E. 318; Mallory v. Gillett, 21 N. Y. 412. As before stated, John G. Jenkins, Sr., was a heavy stockholder in the Frank & J. G. Jenkins, Jr., Company which had borrowed from the Jenkins Trust Company more than the law allowed. He was also an officer of the Jenkins Trust Company and a member of the executive committee which had authorized and made these loans. On October 25, 1907, the trust company was financially embarrassed for want of cash, and was obliged to close its doors. The enormous loans, insufficiently secured, of the Frank & J. G. Jenkins, Jr., Company were then due, and could have been called with disastrous results to that company and to the interests of the senior Jenkins therein. Such cases as McKinney v. Armstrong, 97 Ill. App. 208, Redington v. Cornwell, 90 Cal. 49, 27 Pac. 40, and Davis v. Patrick, 141 U. S. 479, 12 Sup. Ct. 58, 35 L. Ed. 826, would indicate that a beneficial consideration ran directly to John G. Jenkins, Sr., for any oral promise to further secure the debts of Frank & J. G. Jenkins, Jr., Company in order to extend the loans, and therefore took such

promise out of the statute of frauds.   But without touching further upon this point, I am convinced, third, that John G. Jenkins, Sr., would be estopped from pleading the statute of frauds.   As before stated, the trust company, on the 25th day of October, 1907, closed its doors for want of cash, and the banking authorities of the state took possession. Upon an examination of its affairs the superintendent of banks made a report in writing that the trust company was solvent.   The books of the company carried the bond and mortgage in question as security for the Jenkins loans, and the bank examiner's report stated the same fact, including, therefore, the bond and mortgage as part of its assets.   On the 7th and 13th of November were held meetings of the directors at which John G. Jenkins, Sr., was present, and at which the bank examiner's report was read, including the statement that the bond and mortgage in question were held by the company as an asset or as security for the loans made to the Frank & J. G. Jenkins, Jr., Company.   By this report the institution was made out to be solvent. This being the condition, the directors, with the approval and acquiescence of John G. Jenkins, Sr., undertook to reopen, appointing a committee to carry out plans for the purpose, and adopting a form of agreement to be sent to the depositors, whereby they would undertake to allow their deposits to remain under certain conditions.   About 80 per cent. of the depositors signed and returned the blank form of agreement sent to them.   The minutes of the meeting of November 7th show also a form of letter to be sent to the depositors, which reads as follows:

"The undersigned are a committee of the stockholders and depositors of the Jenkins Trust Company appointed to take such action as will result in a speedy resumption of the business of the trust company and conserve the best interests of the depositors and stockholders.   *The State Bank Examiner reports that the Jenkins Trust Company is perfectly and absolutely solvent, having its capital and surplus.*"

A receiver having been appointed on November 16, 1907, application was made to the Supreme Court upon papers, including the bank examiner's report and statements showing all of the above facts, on which the receiver was discharged and the trust company permitted to resume business on April 15, 1908, under the subsequently adopted name of the Lafayette Trust Company.   Business was thereafter carried on by the trust company, and further deposits received up to November 30, 1908, when the trust company again closed its doors and passed under the control of the superintendent of banks.   By this time the trust company was insolvent and unable to pay its depositors, who up to the present time have received dividends of only 55 per cent. Actions have also been commenced against the stockholders to recover upon their statutory liability.   In these facts, briefly stated, I find all of the elements of estoppel.   John G. Jenkins, Sr., had assigned the bond and mortgage of $300,000 to the Jenkins Trust Company as security for loans to his brokerage company.   He frequently stated that the trust company held this bond and mortgage as an asset or as property out of which it could repay to itself the Jenkins' loans.   With his knowledge, acquiescence, and consent the bank examiner included it as

an asset or as collateral of the company by reason of which he figured out the solvency of the institution. John G. Jenkins, Sr., knowing that this bond and mortgage was thus counted upon to render the trust company solvent, permitted notices to be sent out to all depositors, assuring them of the fact and requesting them, in view thereof, to permit their deposits to remain for a stated period. He also permitted, with his knowledge and acquiescence, a committee to be appointed to reopen the institution upon the basis of its solvency and the possession and ownership of this bond and mortgage. In reliance upon these statements, representations, and his acquiescent attitude the trust company did reopen by permission of the Supreme Court, and additional deposits were received and new and greater obligations incurred. To permit John G. Jenkins, Sr., if he were alive, or those representing him, to withdraw this bond and mortgage from the assets of the company and to plead that under the statute of frauds the assignment was void because collateral to an oral promise to pay the debts of the Frank & J. G. Jenkins, Jr., Company would sanction a greater fraud than the statute of frauds was ever intended to prevent.

[2] The statute of frauds cannot be used to work a fraud, and such a result will be prevented by the application of the doctrine of estoppel. Brown v. Bowen, 30 N. Y. 519–541, 86 Am. Dec. 406; Thompson v. Simpson, 128 N. Y. 271, 28 N. E. 627; Clark v. West, 193 N. Y. 349–361, 86 N. E. 1; Draper v. Oswego County Fire B. Ass'n, 190 N. Y. 12–16, 82 N. E. 755.

Judgment for defendants, with costs.