GATES WISEMAN et al., Executors, etc., Respondents, *v.* JACOB LUCKSINGER, Appellant.

A right of drainage through the lands of another is an easement requiring for its enjoyment an interest in such lands which cannot be conferred by parol license: it can only be granted " by deed or conveyance in writing." (2 R. S. 134, § 6.)

The parol contract which equity will regard as equivalent to the grant required at common law or by the statute must be a complete and sufficient contract, founded not only on a valuable consideration, but with its terms defined by satisfactory proof, and accompanied by acts of part performance unequivocally referable to the supposed agreement.

A mere license to drain is not made irrevocable by the fact that a valuable consideration was paid therefor.

The parties owned adjoining city lots, fronting upon a street in which there was no sewer. Defendant built an underground drain or sewer of plank from his house to a sewer in another street; he gave to plaintiff, for the consideration of $7, a writing stating that the money was received " for the right to drain through my premises," and plaintiff thereupon built a similar drain of plank connecting with defendant's drain. After the lapse

of over twenty years, plaintiff took up his drain and replaced it with a drain of tile of greater capacity than defendant's, and also made changes in his privy vault, and thereafter the filth and foul water from his privy flowed back into defendant's cellar; thereupon defendant, on his own land, cut off the connection and refused to allow plaintiff to go upon his premises to open and repair the drain. In an action to restrain defendant from obstructing the sewer and for damages, *held*, that the agreement indicated by the writing could not be inferred to be a permanent one, but it would be satisfied by regarding it as a temporary arrangement, and should be so construed; that the agreement so indicated was good as a license giving plaintiff immunity while acting under it, but giving no vested right to the use or enjoyment of the privilege, against the will of the grantor; and that, therefore, it was revocable at the pleasure of the latter.

Also, *held*, that twenty years' user did not give plaintiff a prescriptive right to the easement, as the possession was by consent of defendant and there could be no adverse possession until defendant cut off plaintiff's drain.

*Wetmore* v. *White* (2 Cai. Cas. 87), *Brown* v. *Bowen* (30 N. Y. 541), *Rindge* v. *Baker* (57 id. 209), *Pierrepont* v. *Barnard* (6 id. 304), *Miller* v. *A. & S. R. R. Co.* (6 Hill, 63), *Wolfe* v. *Frost* (4 Sandf. Ch. 93), *Sibley* v. *Ellis* (11 Gray, 417), *Ward* v. *Warren* (82 N. Y. 265), *La Frombois* v. *Jackson* (8 Cow. 589), *Briggs* v. *Prosser* (14 Wend. 227), *Ashley* v. *Ashley* (4 Gray, 197), distinguished.

(Argued January 17, 1881; decided February 8, 1881.)

APPEAL from judgment of the General Term of the Supreme Court in the fourth judicial department, entered upon an order made April 26, 1879, affirming a judgment in favor of plaintiff, entered upon a decision of the court on trial at a Special Term.

This action was brought to restrain defendant from interfering with plaintiff's alleged right of drainage across defendant's premises, and for damages, etc.

The facts appear sufficiently in the opinion.

*D. Pratt* for appellant. An easement of the character of the one in suit can only be created by deed or grant, or by prescription, from which a grant may be inferred. (Addison on Torts, 130; 3 Kent's Com. 419; Angell on Water-courses, § 168; 1 Coke Lit. 9 a; Gilbert's Law on Evidence, 96 [6th ed.]; *Fentinam* v. *Smith*, 4 East, 109; 2 H. Blackst. 259; *Hewlings* v. *Shipman*, 5 Barn. & Cress. 321, *Pitkins* v. *L. I.*

*R. R. Co.*, 2 Barb. Ch. 230; *Brown* v. *Woodworth*, 5 Barb. 550; *Wolf* v. *Frost*, 4 Sandf. Ch. 72; 2 Barb. Ch. 230; *Applegate* v. *Morse*, 7 Lans. 60, 61; *Babcock* v. *Utter*, Abb. Ct. of App. Cas. 27; Angell on Water-courses, §§ 286, 287, 288; *Parker* v. *Foote*, 19 Wend. 309.) No right by prescription was shown. (Angell, etc., §§ 210–214; Laws of Easement, 121; 7 Lans. 61; Angell's Sup., §§ 213, 216; *Burbank* v. *Fay*, 65 N. Y. 57, 65; Washburn on Easements, 124, § 27; 1 Washburn on Real Property, 541, etc.; 2 id. 274; *St. Vincent Orphan Asylum* v. *City of Troy*, 76 N. Y. 108, 113; *Applegate* v. *Morse*, 7 Lans. 61; *Luce* v. *Carley*, 24 Wend. 451; *Colvin* v. *Burnet*, 17 id. 564; *Hart* v. *Vose*, 19 id. 365; *Mumford* v. *Whiting*, 15 id. 380; *Parker* v. *Foote*, 13 id. 309; *Hewlins* v. *Shipman*, 5 Barn. & Cress. 221; *Cocker* v. *Cowper*, 1 Cromp. Mees. & Rosc. 418; *Borden* v. *South Side R. R. Co.*, 5 Hun, 184; *Babcock* v. *Utter*, 1 Abb. App. Cas. 27; 1 Washburn on Real Property, 406, marg.; *Arnold* v. *Stearns*, 24 Pick. 106; Angell, etc., § 2019; 7 Wheat. 109; 1 Johns. 156; *Adams* v. *Van Alstine*, 25 N. Y. 238; Washburn, 137.) The extent of the presumed right is determined by the user upon which is founded the presumed grant. (Angell, etc., 224; Washburn on Easements, 109, 123; 2 Washburn on Real Estate, 342.) The use of said sewer for draining the filth and accumulations of the plaintiff's privies through it is not authorized by the original use of the same. (Washburn on Easements, 53, § 22; *Butterworth* v. *Crawford*, 46 N. Y. 349; *Burbank* v. *Fay*, 65 id. 57; *Markham* v. *Stowe*, 66 id. 574.) A valuable consideration alone is never held in this State to take a parol agreement for the sale of lands out of the statute of frauds. (*Wolf* v. *Frost*, 4 Sandf. Ch. 72.) Such a parol agreement applied to an easement amounts simply to a license, and is revocable at any time by the licensee. (*Applegate* v. *Morse*, 7 Lans. 60; *Hewlings* v. *Shippman*, 5 Barn. & Cress. 221; *Luce* v. *Carley*, 24 Wend. 451; *Babcock* v. *Utter*, 1 Abb. App. Cas. 27.) The court should not have allowed costs. (*Johnson* v. *Taber*, 10 N. Y. 319.)

*Wm. C. Ruger* for respondents. The parol contract for an easement having been executed, the parties are estopped from denying the existence of the right. (*Brown* v. *Bowen,* 30 N. Y. 541; *Le Fevre* v. *Le Fevre,* 4 S. & R. 241; *Renick* v. *Kern,* 14 id. 267; *Lacy* v. *Arnett,* 33 Penn. St. 169; *Snowden* v. *Vilas,* 19 Ind. 10; *Cumberland R. R. Co.* v. *McCarnly,* 59 Penn. St. 23.) Courts of equity have everywhere, upon the two-fold ground of estoppel and the prevention of fraud, given effect to parol agreements for the grant of an easement, when founded upon a valuable consideration. (*Rindge* v. *Baker,* 57 N. Y. 209; *Wetmore* v. *White,* 2 Caine's Cas. 87; *Babcock* v. *Utter,* 1 Abb. Ct. of App. Dec. 27; *Pierrepont* v. *Brainard,* 6 N. Y. 304; *Miller* v. *A. & S. R. R. Co.,* 6 Hill, 63; *Wolfe* v. *Frost,* 4 Sandf. Ch. 93, 94, 95; *Hall* v. *Chaffees,* 13 Vt. 157, note; *Foster* v. *Browning,* 4 R. I. 53; *Prince* v. *Case,* 10 Conn. 480; *Short* v. *Taylor,* 2 Eq. Cas. Abr. 523, pl. 3; *East India Co.* v. *Vincett,* 2 Atk. 83; *Duke of Devonshire* v. *Elgin,* 14 Beav. 530; *Powell* v. *Thomas,* 6 Hare, 300; *Hervey* v. *Smith,* 23 Beav. 299; *Morland* v. *Richardson,* 22 id. 596; Gale on Easements [2d ed.], 99; 1 Addison on Torts, 186, 187; Cooley on Torts, 306, 312, § 21; 21 Alb. L. J. 441; Cooley on Torts, 311.) The plaintiffs having established an adverse enjoyment for twenty-five years of the right to drain through the defendant's premises, they have thereby gained title to such easement by prescription and a court of equity has undoubted jurisdiction to define and establish the rights of the parties. (*Belknap* v. *Tremble,* 3 Paige, 577, 586; *Sibley* v. *Ellis,* 11 Gray, 417; *Corning* v. *Gould,* 16 Wend. 531; *Miller* v. *Garlock,* 8 Barb. 531; 8 Pick. 504; 36 Vt. 503; *Ward* v. *Warren,* 11 N. Y. Wkly. Dig. 89, 90; Court of Appeals, Oct. 5, 1880; *Angus* v. *Dalton,* L. R., 4 Q. B. D. 162.) The plaintiffs' testator having entered upon the enjoyment of the easement in question, under a contract founded upon a valuable consideration, and continued in the enjoyment thereof for more than twenty years, such user was adverse. (Washburn on Easements [2d ed.], 124; *Hammond* v. *Zehner,* 21 N. Y. 118; *Law* v. *McDonald,* 9 Hun, 23; *Legg* v. *Horn,* 45 Conn. 409; *Ashley*

. v. *Ashley*, 4 Gray, 197; *Coe* v. *Wolcottville Mfg. Co.*, 35 Conn. 175; *Clapp* v. *Bromagham*, 9 Cow. 530, 556, 557; *La Frombois* v. *Jackson*, 8 id. 589, 597; *Briggs* v. *Prosser*, 14 Wend. 227; *Bogardus* v. *Trinity Ch.*, 4 Sandf. Ch. 633; *Comines* v. *Comines*, 21 Conn. 413; *Sumner* v. *Stearnes*, 6 Metc. 337; *Steele* v. *Johnson*, 4 Allen, 425; *La Frombois* v. *Jackson*, 8 Cow. 389, 597; *Clapp* v. *Bromagham*, 9 id. 550, 556, 557; *Briggs* v. *Prosser*, 14 Wend. 227; *Dewhurst* v. *Wrigley*, C. P. Cooper, 329, note; Goddard on Easements, 115; *Brown* v. *Windsor*, 1 Cr. & Jer. 20; *Arbuckle* v. *Ward*, 29 Vt. 43, 52; *Perrin* v. *Garfield*, 37 Vt. 310; Washburn on Easements [2d ed.], 125; 1 Addison on Torts, 156.) The plaintiffs being satisfied to accept the easement according to the original limits thereof, the defendant cannot complain. (*Cooper* v. *Hubbard*, 30 Beav. 160, 165; 1 Addison on Torts, 152; Washburn on Easements [2d ed.], 62, 63; *Brooks* v. *Curtis*, 4 Lans. 286; *S. C.* on appeal, 50 N. Y. 645; *Beals* v. *Stewart*, 6 Lans. 408; *Prescott* v. *White*, 21 Pick. 341; *McMillan* v. *Cronin*, 76 N. Y. 474; *Legg* v. *Horn*, 45 Conn. 409.) It was within the discretion of the court to award costs and such discretion cannot be now reviewed, no abuse of discretion being shown. (*Church* v. *Kidd*, 3 Hun, 271; *Baker* v. *White*, 1 Abb. Ct. App. Dec. 97.)

DANFORTH, J. Although the action is in equity, the plaintiffs sought compensation in damages as well as equitable relief. The former was denied to them, but the latter has been granted to the full extent asked for. I can discover no ground upon which it can be approved.

The parties are owners of adjoining city lots in the city of Syracuse. The defendant built an underground drain or sewer of plank from the basement of his house, through his own lot and that of one Stern, to Jefferson street sewer, and afterward "and more than twenty-five years last past, the plaintiff," as the trial court finds, "purchased of the defendant the right and easement to drain his premises, by an underground drain and covered sewer, through the defendant's premises, for the consideration of seven dol-

lars, which the plaintiff paid and the defendant accepted;" and thereupon the plaintiff, partly upon his own premises and partly on those of the defendant, built an underground sewer of plank to connect with the sewer of the defendant. The connection was made a short distance from the line dividing the respective lots. It is further found, that "the plaintiff for over twenty-five years enjoyed the privilege as of right of draining his own premises through this sewer, until July 22, 1876, when the connection was cut off by the defendant on his own land." At that time he denied the plaintiff's right, obstructed the flow of water, "and refused to allow the plaintiff to go upon his premises to maintain and repair the said sewer." It is also found that "before this, and in 1873, the plaintiff caused his old sewer to be taken up and replaced with a tile sewer of a capacity greater than that of defendant's sewer, with which it was connected." The plaintiff had also made changes in the form of his privy vault, and the court found that "after this change, and the alteration and enlargement of his sewer by the plaintiff, the filth and foul water from his privy flowed back into the cellar of the defendant, creating stench and a great nuisance to defendant, rendering his house unfit to live in, and that to prevent such injury to his premises the defendant tore up said sewer." The learned court also found, as a fact, that "no deed of conveyance of said easement or right to drain through said defendant's premises was ever executed by defendant to plaintiff, nor was any written contract agreeing to convey ever executed by defendant or any one for him, except the receipt for seven dollars for the right to drain through defendant's premises." The receipt referred to was not produced upon the trial, but after proving its loss, the plaintiff was allowed to show its contents by his witnesses. Neither of them had seen the paper for many years, and there was some difference as to its form. It is not stated by the court in any other way than in the above finding, but it is given by one witness in these words: "Received of Joseph Wiseman, seven dollars, for the right to drain through my premises;" and this, he says, bore the signature of the

defendant. It is adopted by the learned counsel for the respondents in his points, and is the form most favorable to his contention. The trial court found, "as conclusion of law and equity, that the plaintiff acquired the right of draining his premises on the defendant's premises more than twenty-five years before the said obstruction, and during all that time enjoyed the same as of right; that the plaintiff is entitled to judgment declaring his said right and easement on the defendant's premises and restraining him from interfering with the plaintiff's enjoyment of such easement; and that the plaintiff is entitled to go upon the defendant's premises to rebuild and repair the same." Judgment was entered accordingly, and it having been affirmed by the General Term, the defendant has appealed to this court.

The right awarded to the plaintiff to have his drain pass through the defendant's land is in the terms of the judgment an easement, and for its enjoyment requires that the plaintiff shall have an interest in the defendant's land.

In *Hewlins* v. *Shippam* (5 B. & C. 221; 11 Eng. Com. Law Rep., 207), the question was, whether a right to a drain running through the adjoining land could be conferred by parol license, and after the fullest examination it was decided that it could not. The facts in that case are singularly like those now before us, and make the conclusion reached of value upon this inquiry. *Cocker* v. *Cowper* (1 C. M. & R. 418) was a similar case. The plaintiff therein sued for the obstruction of a drain which had been originally constructed at his expense on the defendant's land by his consent verbally given. After it had been enjoyed for eighteen years, the defendant obstructed it. It was contended by the plaintiff that the license, having been acted upon, could not be revoked; but the court held that *Hewlins* v. *Shipman* (*supra*) was decisive to show that such an easement cannot be conferred except by deed. To the same effect are authorities cited by the appellant's counsel. It is, therefore, within the statute "of fraudulent conveyances and contracts relative to land," and could neither be created, granted or declared, except by deed

or conveyance in writing (2 R. S., tit. 1, chap. VII, part 2, § 6, p. 134); so that consent, although in writing, will be of no more avail than it would be if given by word of mouth. Indeed this is conceded by the learned counsel for the plaintiff to be so at law; but he contends that in equity the case is otherwise, and says, that " courts of equity give effect to parol agreements for the grant of an easement when founded upon a valuable consideration." Assuming that to be so we may inquire whether there is any thing in this case to call for the exercise of such extraordinary jurisdiction. And first, the contract which equity will regard as equivalent to the grant required at common law or by the statute must be a complete and sufficient contract, founded not only on a valuable consideration, but its terms defined by satisfactory proof, and accompanied by acts of part performance unequivocally referable to the supposed agreement. In such a case the application of the statute is withheld, lest by its interposition the mischief would be encouraged which the legislature intended to prevent. There is, I think, little danger of that in the present case. If we look at the situation of the parties at the time the contract was entered into, it will be difficult to infer that they considered the arrangement indicated by the writing to be a permanent one. The lots of both parties fronted upon a public street — in it there was no sewer. If there had been, it cannot be doubted, that as the easiest, cheapest and most natural way of drainage, they would have used it. As it was, the defendant was obliged, not only to carry his drain the whole length of his lot, but first by license, and then by purchase, acquire the right to cross another lot before an outlet for his drain could be had. His drain was built of plank, at little expense and soon perishable. While, in this condition, the plaintiff applies, according to his own testimony, for the privilege of draining his lot into the defendant's drain, and obtains it by the payment of seven dollars. So much the receipt indicates. There is nothing more. Its language is equivocal. It would be satisfied by drainage during the pleasure of the defendant, or during the life of the plaintiff, or until a public

sewer should be constructed in the street by which the lot was bounded. There is nothing said as to how long it should continue. And when we consider the heavy imposition that would rest upon the defendant's lot, the annoyance from smells, the perpetual lien and incumbrance, necessarily rendering the land unsalable or of less value in the market — less available for improvement — compelling the defendant so to build that his structure should not interfere with the plaintiff's right of drainage, of inspection, of rebuilding and reparation, we find nothing which permits the inference that the permission indicated by the receipt was intended to be in perpetuity. The nature and character of the easement, the purpose which it was intended to serve, and other circumstances above adverted to, must be taken into account. The effect of the judgment is to deprive the defendant of the full enjoyment of his property, and subject it to the control of another. I am unable to find, in the words of the parties, any intention to produce that result. It is not expressed in the receipt, nor is it fairly to be implied. Full effect may be given to it by regarding it as a temporary arrangement; and it should, I think, be so construed.

Nor has any thing been done referable to such an agreement as one giving a right in perpetuity. The connecting sewer constructed by the plaintiff was of plank, of short length and trifling expense, temporary and not permanent in character, and, as subsequent events have shown, easily and necessarily displaced to make room for another better adapted to the increasing necessities of the plaintiff and his improved method of removing filth from his premises. The case is not analogous to *Wetmore* v. *White* (2 Cai. Cas. 87), *Brown* v. *Bowen* (30 N. Y. 541), *Rindge* v. *Baker* (57 id. 209), *Babcock* v. *Utter* (1 Abb. Ct. of App. Dec. 27), *Pierrepont* v. *Barnard* (6 N. Y. 304), *Miller* v. *A. & S. R. R.* (6 Hill, 63), or *Wolfe* v. *Frost* (4 Sandf. Ch. 93), cited by the learned counsel for the respondents. So far as they bear upon the question as to the effect of part performance, it will be seen that large expenditures were made upon permanent and valuable improvements, not reasonably to be accounted for except upon the

belief, on the part of the person making them, that an actual interest or estate in the land had been acquired, not depending upon any contingency, or the will or acquiescence of another. This was so in *Wetmore* v. *White* (*supra*). Mills were erected, for the use of which the easement in question was indispensable. The court say : " Public accommodation and private emolument were probably the primary inducements for building the mills and diverting the water ; the same reasons, for any thing that appears, now exist for their continuance." The defendant claimed the right to restore the water to its original channel, but the court denied it, on the ground that his conduct in not disclosing his right at the time of selling the mills, his sleeping so long upon the claim and permitting the appellant to expend his money in repairing and rebuilding the mills, was unconscientious and formed strong grounds for the interposition of a court of equity. *Brown* v. *Bowen* (*supra*) was an action for damages caused by defendants' acts in setting water back upon the plaintiff's mills, and a verdict for the plaintiff was sustained upon the ground that the defendants were by their conduct estopped from setting up a right to do the acts complained of. On the other hand, in *Babcock* v. *Utter* (1 Abb. Ct. of App. Dec. 27), it was held that the easement then in question, and which in character was like the one claimed here, was an interest in real estate, incapable of transmission by parol, and the question was, " whether it could be done by a court of equity, against the positive provisions of the statute." There the license given permitted the doing of an act on the land of the licensor by which water power had been secured. The defendant interfered with it and the plaintiff brought an action in equity to establish his easement, to restrain the defendant from diverting the water and for damages for the diversion already made. He failed in the action, the court saying : "A mere verbal license to do an act or a series of acts upon the land of the licensor necessarily excludes all idea of a right to do the act or acts by virtue of a contract, or promise, which equity might enforce specifically ;" adding : " To grant the relief here prayed for would

effectually subvert the legal right, or, which is the same thing in effect, forever prevent the exercise of those rights which unavoidably pertain to one seized of the undisputed legal title, and with which he has never consented to part." The consequences thus pointed out are illustrated by the judgment in this case. It gives to the plaintiff a right to the perpetual use of the defendant's land, although "there is no stipulation as to such title or right," and it is, there-fore, as declared in the case cited, "as repugnant to the principles of equity as to the rules of law." I do not in detail state the other cases cited by the appellant, for as to them it is enough to say they decide nothing contrary to the views ex-pressed in the case just referred to. While the argument of the learned Judge WELLES, in *Pierrepont* v. *Barnard* (6 N. Y. 279) distinguishes between an easement and a license, *Miller* v. *A. & S. R. R. Co.* (6 Hill, 63) and *Wolfe* v. *Frost* (4 Sandf. Ch. 93) seem to support the appellant's view of the proper limitation to the plaintiff's rights. There are no doubt many cases in which courts recognize an equitable right to an easement without a deed; but there will be found in them either an express agreement for an easement, or an acquiesc-ence or consent by conduct which has led to the erecting of permanent works, or valuable and lasting improvements, or some other fact which would make the assertion of a legal title operate as . fraud upon the persons setting up the equitable right. But here there is no agreement. for an easement, and no circumstances which render it inequita-ble in the defendant to insist upon the application of the statute.

The agreement, however, to be implied from the receipt was undoubtedly good as a license, giving to the plaintiff immunity while acting under its privilege, but no vested right entitling him to its use or enjoyment against the will of the grantor; and this presents the point of difference between the parties. In behalf of the plaintiff is claimed an indefeasible right to an easement, such as passes by deed only; while the defendant

denies to him any interest except as licensee, and construes the receipt as a mere dispensation or license, which "properly passes ✓ no interest nor alters or transfers property in any thing, but only makes an action lawful, which, without it, had been unlawful." (*Per* VAUGHAN, Ch. J., *Thomas* v. *Sorrell*, Vaughan, 351.) Therefore, the plaintiff had liberty to enter upon the defendant's land and lay his sewer, subject to interruption at the defendant's will, but nothing more ; and this, except for the license, would have been unlawful. The principle upon which, after the fullest consideration *Babcock* v. *Utter* (*supra*), and *St. Vincent Orphan Asylum* v. *City of Troy* (hereafter referred to), and *Wood* v. *Leadbitter* (13 M. & W. 838), were decided, applies here, and the case itself seems a reproduction of the one put by ALDERSON, J., in the one last cited. "Suppose," he says, "the case of a parol license to come on my lands, and there to make a water-course, to flow on the lands of the licensee. In such a case there is no valid grant of the water-course, and the license remains a mere license, and therefore capable of being revoked. On the other hand, if such a license were granted by deed then the question would be on the construction of the deed, whether it amounted to a grant of the water-course ; and if it did, then the license would be irrevocable." Now the receipt contains a mere license or permission to drain, and no agreement to convey an easement; nor is the license coupled with any interest in the land. It was, therefore, revocable, and its revocation did not operate as a fraud upon the plaintiff. His expenditures were trifling, and for aught that appears, have been more than repaid in the use already had by the plaintiff of the privilege given to him. There is no finding that by the action of the defendant he will be deprived of the means of drainage; and the contrary may not only be presumed, from the fact that the lot is on one of the public streets of the city, but if we look into the evidence, we see that there are sewers in neighboring streets to which access may be had, although doubtless with more expense and labor. Without regard however to these considerations, which apply to the equity of his case and not to any right, we have no doubt of the

power of the ~~plaintiff~~ & to revoke the permission or license given. Nor does the fact of payment for the license alter the defendant's right. His permission to drain·was still a mere license, and none the less revocable that it was paid for. (*Hewlings* v. *Shippam*, 5 Barn. & Cress., *ante.*)

It is also contended, on behalf of the plaintiff, that the judgment may be sustained upon the ground that he has a prescriptive right to the easement. This claim is inconsistent with the theory of the action, as we find it disclosed in the complaint. There an agreement of purchase is set out, naming the price paid, and the averments of right subsequently made evidently refer to a right so acquired; and following that theory is the finding of the trial judge, based upon an agreement for which a consideration was paid. Moreover it is opposed to the claim that the agreement exists of which specific performance may be decreed; for to support it the possession and part performance must be with consent of the vendor, and in pursuance of and in reliance upon a contract, for otherwise there would be no fraud in the refusal of the vendor to execute or abide by his agreement. So if the possession was adverse; and in neither aspect would it present a feature for the jurisdiction of a court of equity. But I find nothing upon which this point can stand. The finding of the trial court is distinct: That within a short time after 1842, " and more than twenty-five years last past, the plaintiff purchased of the defendant the right and easement, for the consideration of seven· dollars." Thus the ·acts of possession commenced by permission purchased for a price, the minds of both parties concurring. If we look at the testimony given on the trial, we also find that the plaintiff's theory, from the beginning to the end, was that " an arrangement was made between the plaintiff and the defendant in reference to the sewer." Such is the plaintiff's own evidence. He says he applied to the defendant for the privilege and obtained it — that he first obtained this right. He says, " He permitted me to get a sewer there at the time I built the house; I made the bargain with him to connect the sewer," and then did so. The defendant confirms this. Denying the receipt·of

money, he admits that he gave permission. As to that fact, there was no controversy between the parties; and it follows that there could be no adverse possession until after July, 1876, when the defendant did the thing complained of, and cutting off the plaintiff's sewer, forbade his entrance upon the premises. Up to that time, possession under the license or permission of the defendant prevented it from being adverse. But the question is well settled by authority. (*White* v. *Spencer*, 14 N. Y. 247–249; *Jackson* v. *McConnell*, 19 Wend. 177; *Jackson* v. *Parker*, 3 Johns. Cas. 124.) *The St. Vincent Orphan Asylum* v. *City of Troy* (12 Hun, 317) came before the Supreme Court in 1877. It appeared that in 1853 the defendant, by formal resolution of its common council, relinquished certain land theretofore used as a street, and in the same manner declared that the Troy Hospital, which then stood on the adjacent lot, was at liberty to inclose the land so relinquished within its grounds, for the use of that institution. This was done, and possession retained for more than twenty years. But thereafter the city sought to remove the wall, and in an action commenced against them, the plaintiff recovered. Upon appeal the General Term sustained the verdict, upon the ground that under the resolution of 1853, possession had been taken and permanent improvements made on the faith thereof, and held that the defendant was concluded by its resolution, "followed as it was by actual and continued occupation under claim of absolute right, especially in view of the improvements made on the faith of the action of the common council." Upon appeal to this court (76 N. Y. 108), the judgment was reversed. The view taken by the Supreme Court was relied upon in support of the judgment, and it was also urged that the plaintiff's possession was adverse to the title of any other claimant. This court, however, held, first, that the resolution of the common council was invalid for want of power; but in answer to the plaintiff's claim as one holding by adverse possession, say: "The plaintiff's occupation, at least previous to the rescission by the common council in 1868, was not an adverse possession within the statute of limitations;" adding: "The occupation

of a grantee of the fee is perhaps hostile to his grantor, but not so as to a licensee." I am not able to see why this decision is not in point and conclusive upon us in this case. The resolution was general and unlimited in terms; it gave permission " to inclose" the land " for its use." It was held to be a license. It was also held to be invalid. But the court say : " The entry of the plaintiff was, nevertheless, under it, and the holding is not · adverse." In the case before us, the words of the receipt are general and unlimited, " for the right to drain through my premises ; " but if construed so as to give an interest in land or an easement, is invalid, because not in conformity to the statute. And the court further say : " The license being invalid and void, could of course be the foundation of no right in the plaintiff, but its entry and occupation thereunder was nevertheless no more adverse to the defendant than if the license had been valid." The same doctrine is asserted in many other cases, and is deemed so well settled, that it has found its way into the text-books, where, in various forms of words, it is declared that enjoyment had under a license or permission from the owner of the servient tenement confers no right as to the easement (Angell on Water-courses, § 216) ; and so the effect of the user would be destroyed, if it were shown that it took place by the express permission of the owner of the servient tenement ; and the reason is, that such enjoyment is consistent with the right of the owner of that tenement, and consequently confers no right in opposition thereto. ( *White* v. *Spencer*, *supra*.)

The case of *Sibley* v. *Ellis* (11 Gray, 417), cited by the respondent, is not in conflict with these propositions. It there appeared that the user began in a trespass and had continued open and adverse for twenty years. It was therefore held that the defendant had a prescriptive right. To the same effect are many other cases cited by him ; but they have no tendency to support the demand of the plaintiff. His user has not been adverse, nor has it been under a claim of right. The trial court does not so find it, nor that it was adverse. In the recent

case of *Ward* v. *Warren*, lately decided by this court,* and to which our attention is called, the plaintiff claimed the title by prescription; and it was adjudged in his favor, because the trial court found " that the use of the way by him and his predecessors in the title had been adverse, under claim of right, exclusive, open and notorious, with the knowledge and acquiescence of defendants and their grantors, for forty-eight years." It was substantially so in the other cases cited by the respondent. Here there is no finding that the use was under a claim of right, or that it was adverse. On the contrary, the source of the plaintiff's possession was the defendant's permission; never under any claim of right, or in any sense adverse to the defendant. Our attention has been also directed to the following as authorities in favor of the plaintiff's contention. (Washburn on Easements, § 88; *La Frombois* v. *Jackson*, 8 Cow. 589; *Briggs* v. *Prosser*, 14 Wend. 227.) It is said by Washburn (*ante*), that although a right of way cannot be created by parol agreement, yet where, under such an agreement, the way was used for twenty years, and the same was acquiesced in by the owner of the servient estate, a prescriptive right was thereby gained. The learned author as authority for this statement cites *Ashley* v. *Ashley* (4 Gray, 197). It depends on quite other considerations. It appeared that when a deed of certain land was delivered to the defendant, the grantor's agent stated it reserved no right of way to her own lot, and the defendant replied that she might pass over the land as much as she pleased, " as much as if the right of way was in the deed;"· and the user having thereafter continued twenty years, this evidence was admitted, as having a tendency to show that the plaintiff used the way openly, as of right, against the owner of the soil, and so was adverse. *La Frombois* v. *Jackson* (*supra*) is to the effect that an entry under color of title will be adverse, however groundless the supposed title may be, while possession, without claim of title, will never confer a title on the possessor. In *Briggs* v. *Prosser* (*supra*), the defendant, for the purpose of showing adverse possession, offered to show that he was in under con-

---

* 82 N. Y. 265.

tract for the conveyance of land, the price of which had been fully paid, so that he was in equity the owner, and also to show declarations of the plaintiff to the effect that he had sold the premises to the defendant, and that they belonged to him; and all this for the purpose of establishing an adverse possession. It was held proper for that purpose, because the defendant was equitably entitled to a deed, and there was nothing in the character of the possession under it inconsistent with the idea of an adverse possession. Whether it were adverse or not, the court say "would depend upon the circumstances of each particular case." In both cases, possession was taken under a contract for a deed, and it was held, and nothing more, that this did not *per se* necessarily preclude the adverse character of the subsequent possession. In the case before us there was no contract for a deed, or any engagement to confer a title. The cases are not in point. In all, there was an equitable title and a claim of right; and in each of the last two, an agreement for a deed. In all, an obvious intention to claim the title and a possession inconsistent with the plaintiff's ownership. As I have above undertaken to show, the possession of the plaintiff here was under no claim of right, and was entirely consistent with the defendant's title. The plaintiff's enjoyment was permissive, and he had no title, either in law or equity.

It is clear that the defendant, in the acts complained of, has gone no further than to exercise his legal rights. Of these he should not be deprived, unless he has acted in such a way as to make it fraudulent for him to set them up. There is no finding to that effect; nor would the evidence warrant such conclusion. The plaintiff has made out no case against this appeal; and the judgments of the General and Special Terms should therefore be reversed and a new trial granted, with costs to abide the event.

All concur, except EARL, J., dissenting.

FINCH, J., concurring in result.

Judgment reversed.