BRUSH ELECTRIC ILLUMINATING Co. *v.* CONSOLIDATED TELEGRAPH & ELECTRICAL SUBWAY Co.

(*Supreme Court, Special Term, New York County.*   June, 1891.)

1. BOARD OF ELECTRICAL CONTROL—REGULATION OF RATES—REVIEW ON APPEAL.
   Defendant constructed electrical subways in the streets of New York city under a contract (ratified by Laws N. Y. 1887, c. 716) with the board of electrical subways, by which defendant agreed that space in the subways should be leased to any corporation having lawful power to operate electrical subways in New York city, and to fix a fair scale of rent to be charged for the use of such subways; such scale of rents, however, to be subject to the control, modification, and revision by the board of electrical control. *Held*, that the determination as to whether the rents fixed by defendant were fair and reasonable was for the board of electrical control, and, where such board has passed on the question and fixed the rent, its decision is not reviewable by the courts.

2. SAME—RIGHTS OF ELECTRIC LIGHT COMPANIES—INJUNCTION.
   In an action to restrain defendant from removing, from the electric subways so constructed by it, cables and conductors placed therein by plaintiff, an electric light company, it appeared that, after the rates fixed by defendant for such use of its subway had been communicated to plaintiff, a written application was presented by plaintiff to defendant for space in the subway for one year. No agreement was signed by defendant, nor did defendant agree to allow plaintiff to continue the use of the subway for any specified time. *Held*, that the acceptance by defendant of such application, and giving verbal permission to use the subway, was a mere license to use it for the period mentioned in the application, and that the injunction would be denied.

3. SAME—RIGHTS OF SUBWAY COMPANY—RENT.
   Though defendant obtained permission from public authorities to build the subway in the public streets, and bound itself by contract with the board of electrical subways to furnish the use of its subway to such corporations or individuals as should have authority to use the streets for electrical purposes, it is not a common carrier, or possessed by such a franchise as is conferred on a ferry or turnpike company, and it may withdraw the use of the subway from one who refuses to pay for the same.

Action by the Brush Electric Illuminating Company against the Consolidated Telegraph & Electrical Subway Company. Plaintiff moves for an injunction.

*Evarts, Choate & Beaman,* for Brush Electric Illuminating Co. *Carter, Hughes & Cravath,* for United Electric Light & Power Co. and United States Illuminating Co. *Putney & Bishop,* for East River Electric Co. *Townsend, Dyett & Einstein,* for Manhattan Electric Light Co. *Stern & Kingsbury,* for Harlem Lighting Co. *Hoadly, Lauterbach & Johnson,* for Consolidated Telegraph & Electrical Subway Co.

INGRAHAM, J.   The judgment demanded by plaintiff in this action is that the defendant, its officers, agents, and servants, and all others having notice, be perpetually enjoined and restrained from removing, cutting out, or in any

manner whatsoever interfering with the cables and conductors or the property of the plaintiff, and from interfering with the plaintiff, or its officers, agents, and servants, in operating or maintaining the said cables and conductors, and in having access to them or any of the plaintiff's property in the subways of the defendant, or elsewhere, and that this court determine and adjudge what would be a just and reasonable rental for the use of the ducts and subways by the plaintiff, and the terms upon which such rentals must be paid, and that defendant be enjoined from committing any of said acts during the pendency of the action. An inspection of the complaint shows that the theory upon which the plaintiff brought the action was that in some way this court had power to fix what, in its judgment, would be a reasonable rental for the plaintiff to pay for the use of the ducts occupied by it. It seems to me clear that this court has no such power to fix or determine what rental plaintiff should pay, or what would be a reasonable compensation to be paid by plaintiff, for its use of the subways. The defendant has constructed these subways in pursuance of two contracts, known as the contracts of July, 1886, and of April, 1887. The contract of April, 1887, was, in terms, a modification of the contract of 1886, and under its provisions the defendants were authorized to build, equip, maintain, and operate the subways in the contract mentioned and referred to. The defendant, by the contract, agreed that spaces in said subways shall be leased by the parties of the first part (the board of electrical subways) to any company or corporation having lawful power to operate electrical subways in the streets in the city of New York that may apply for the same. It does not appear, however, that the board have ever acted under this authority. The contract, however, further provides that the party of the second part (this defendant) may fix a fair scale of rent to be charged, but the scale of rents or any charges fixed or made by defendant shall at all times be subject to the control, modification, and revision by the board of electrical control, and that no contract shall be made between the party of the second part (the defendant) and any company or corporation on any terms which shall not require the payment by such other companies or corporations of rents at the rates so fixed. This contract was expressly ratified by chapter 716, Laws 1887, and it must control the right of the defendant to the use of the subways constructed by the defendant. It will be seen that the provisions of this contract gave to the defendant in the first instance the authority to fix a uniform rate to be paid by all persons occupying its subways. That rate must be a fair one, but the corporation is to say, in the first instance, what is a fair charge for the use of the subway; and it is clear that until the rate fixed is modified by the board of electrical control, who are the successors of the commissioners of the electrical subways, the rate so fixed must be paid by all persons using the subways. It is thus left to the commissioners to determine whether or not the rate fixed by the defendant is a fair and reasonable rate, and this court is given no power to review the exercise of that discretion; and since the commencement of this action the board of electrical control has passed upon the question, and fixed the rent that the plaintiff is to pay for the use of the subways. I think, therefore, that the court cannot determine what would be a just and reasonable rental for the use of the subways by plaintiff. Nothing in section 7 of the act of 1887 would justify the court in reviewing the action of the board of electrical control, for it was the evident intent of that section to give to the court power by *mandamus* to compel the defendant to comply with its contract, and furnish just and equal facilities to corporations applying for the use of the subways, not to fix the rent that was to be paid, which was, by the express terms of the contract, to be fixed by defendant, subject to the review of the board, and the rate thus fixed must be paid by each corporation using the subways.

Nor do I think that the plaintiff would be entitled to an injunction restraining the defendant from removing, cutting out, or in any manner interfering

with the cables and conductors of the plaintiff.  *The exact relation that exists* between plaintiff and defendant is not easy to determine.  The defendant being the owner of these subways, or ducts, built under the surface of the streets in the city of New York, the plaintiff being desirous of using such subways for its wires or cables with which to supply electricity to its customers, presented to the defendant an instrument in writing whereby application was made for space in the electrical subway (specifying the street or avenue) for the term of one year, to be used for electrical light and power purposes.  In some of these applications the rate or rental was fixed as $1,000 per duct per mile per annum; in other applications the amount of rent was not mentioned.  The rates fixed by defendant had, however, been communicated to the plaintiff prior to making of the applications in question.  No agreement or contract of any kind appears to have been signed by defendant, nor did it agree to allow the plaintiff to continue to use the duct or subway for any specified time.  At most it was an acceptance of the application, and a verbal permission to use the duct for the purpose mentioned.  So far as the plaintiff can claim under any grant or contract made by defendant, this would constitute a mere license to the plaintiff to use the subway or duct for the period mentioned.  By such license the plaintiff acquired no interest in the subway, and, under the contractual relations between the parties, the defendant was, I think, entitled to revoke the license at any time, and upon the revocation of the license all rights of the plaintiff in the subway ceased.  The distinction between a license and an easement is stated in *Wiseman* v. *Lucksinger*, 84 N. Y. 42, and I think, under the rule there laid down, this permission to use these ducts could be nothing more than a license, and revocable at the pleasure of the licensor.

The plaintiff, however, claims that the defendant is a *quasi* public corporation, and has only such rights as are given to it by charter, and, as it is nowhere expressly given the right to withdraw the plaintiff's wires from its ducts, when they are once there it must allow them to remain there forever; and the only remedy that the defendant has against the plaintiff, or any one using its ducts, is an action at law for the recovery of the rent reserved.  It has been held, however, that this principle has reference to remedies or processes of a judicial nature only, and does not affect the right of a person to do such material acts as are necessary to protect his rights. *Jordan, etc., Co.* v. *Morley*, 23 N. Y. 554.  But the statutes and contracts in question conferred upon defendant no remedy in case of the refusal of a person using its subways to pay the rate fixed, and I can see no reason why it should not have the same rights that any other person would have under similar circumstances.  It seems to me, however, that this position arises out of a misconception of the defendant's real position.  The defendant is not a common carrier, nor has it received from the state a franchise such as is conferred upon a ferry company or a turnpike road.  Defendant, it is true, obtained permission from the public authorities to build these subways in the public streets, and it has bound itself by contract to furnish to such corporations or individuals as have authority to use the public streets for electrical purposes the use of its subways, but such obligation rests entirely upon its contract under which it received its authority to build its subways.  Irrespective of that contract, and section 7 of the Acts of 1887, the plaintiff would have no right, against the will of the defendant, to use its subways, nor would the public authorities, nor the courts, have power to compel the defendant to give any rights to the plaintiff.  Whatever right, therefore, the plaintiff acquired, it is under the contract under which the defendant had authority to build the subways, and the statutes under which such contract was made, and there can be nothing found in these statutes or contract that would justify the claim of the plaintiff.  On the contrary, the utmost care is taken to provide for the payment of compensation to the defendant for the use of the subways, and defendant is expressly pre-

vented from giving any one the right to use them, except upon the payment of the rate fixed; and to say that a corporation getting permission to use the subways upon an agreement to pay the rate fixed for its use, under the provisions of the statute, could, by simply refusing to pay, defeat the express provisions of the contract by using the subway without paying for it the rate fixed or paying a less rate, would subvert the whole scheme under which the subways have been built.

The conduct of the plaintiff has not been such as to commend it to the favorable consideration of a court of equity. Although well knowing the rates fixed by defendant for the use of its subways, and where in the application the amount of rent is stated, no application was made to the board of electrical control to review the action of the defendant in fixing the rent, nor did the plaintiff pay or tender to the defendant any sum as compensation for the use of the subway by it. It simply held on to the subway, paying nothing for its use until the defendant threatened to revoke the permission given to use the subway, and then, without paying or offering to pay to the defendant anything, it applies to the court for an injunction, under which it could continue to use the subways indefinitely, without paying anything for the right it enjoys. Under such circumstances, it would require a clear case, and one free from doubt, to justify the interference of the court. I have examined carefully the elaborate arguments submitted on behalf of the plaintiff, and, while it has been impracticable to notice all of the points made, I have come to the conclusion that upon no ground can the plaintiff be entitled to any relief in this action. The motion for injunction must therefore be denied, and temporary injunction vacated.