(61 App. Div. 84.)

## SPINK v. CORNING.

(Supreme Court, Appellate Division, Fourth Department.   April 30, 1901.)

1. WATER COURSE—NATURAL WATER COURSE—IMPROVEMENT THEREOF—LI-
   CENSE—BURDEN OF PROOF.
   A stream shown to have run continuously in a certain channel for over
   50 years, except during a few months in exceptionally dry seasons, and
   before the doing of anything to affect the natural drainage of the land,
   and which drains a large watershed and is supplied by living springs, is
   a natural water course, which the owner of a servient estate must keep
   clear and unobstructed.

2. SAME—LICENSE—OBSTRUCTION.
   Where the owners of land traversed by a natural water course unite
   in widening and deepening such course for the purpose of preventing
   overflows, the successor of the owner of a servient estate cannot ob-
   struct such water course, over 40 years thereafter, on the ground that the
   widening of the course was under a revocable license, in the absence of
   a showing that it was improved under a license, and not under a claim of
   right, as presumed by the continued use thereof.

3. SAME—REVOCATION OF LICENSE.
   An oral or written license to construct an artificial ditch, though given
   for a consideration and intended to be perpetual, may be revoked by a
   landowner after the construction of the ditch.

4. SAME.
   Where the owner of a servient estate and her predecessor in interest
   have acquiesced in the use of a natural water course, as artificially deep-
   ened and enlarged, for over 40 years, she cannot entirely close such water
   course by reason of such deepening and enlarging.

5. SAME—LATERAL DRAINS.
   Artificial lateral drains into a natural water course, though increasing
   and diminishing the flow at different times to the damage of the owner
   of a servient estate, are not wrongful, unless they cause the stream to
   overflow.

   McLennan, J., dissenting.

Appeal from special term, Monroe county.

Injunction by George Spink against Anna Corning and another to
require defendants to remove obstructions from a water course.
From a decree in favor of plaintiff, and from an order denying a new
trial, defendants appeal.   Affirmed.

The action was brought to obtain a mandatory injunction requiring de-
fendants to abate a nuisance consisting of obstructions placed by them in a
natural water course, causing the overflow of plaintiff's lands, and perma-
nently restraining them from obstructing such water course as it existed prior
to the year 1895, and for damages to plaintiff's crops caused by such over-
flow.   The issues were brought to trial at a special term on the 5th day of
April, 1900; and, at the close of the evidence relating to the existence and
history of the water course, the court, at the request of counsel, framed cer-
tain issues of fact for submission to a jury.   The issues so framed were tried
at a trial term commencing on the 4th day of May, 1900.   The questions,
together with the determination of the jury thereon, were as follows:   "Did
the defendants, or either of them, obstruct the creek or ditch mentioned in
the plaintiff's complaint?   Answer. Yes.   Second. If either of the defend-
ants did obstruct the creek or ditch, which one obstructed it?   Answer. Both.
Third. When were the several obstructions, if any, made, and by which de-
fendants, respectively, were they made?   Answer. Miss Anna Corning in
the years 1895, '96, '97, and '98.   F. T. Peart assisted in 1897.   Fourth. Did
the defendants, or either of them, obstruct the stream more than was neces-
sary to place back into the creek or ditch what had been excavated in the
year 1895, and, if so, which one?   Answer. Yes; both.   Anna Corning in

the years 1895, '96, '97, '98. F. T. Peart assisted in 1897. Fifth. Was the plaintiff damaged in consequence of said obstructions? Answer. Yes. Sixth. How much were the damages caused by the defendant Anna Corning? Answer. ($500) Five hundred dollars. Seventh. How much were the damages caused by the defendant Frank T. Peart. Answer. ($1) One dollar. Eighth. If the plaintiff was damaged, state the nature of the crops damaged? Answer. Potatoes, carrots, onions, wheat, corn, oats, buckwheat, and grass. Ninth. Did the plaintiff go upon defendant's property and excavate the rock in said stream without the consent of Anna Corning? Answer. No." Thereupon defendant's counsel made a motion for a new trial upon the minutes of the court, upon all the grounds specified in section 999 of the Code, at said trial term. The motion was denied, but without prejudice to renew the same at special term, where it was reviewed and denied. The hearing before the special term was thereupon resumed, and a decision containing findings of fact and conclusions of law was made and filed. The decision followed the findings of the jury upon the questions submitted to them. The court also found that plaintiff was, and since the 28th day of March, 1868, had been, the owner in fee and possession of the premises described in the complaint, consisting of 39 acres and 34½ rods of land in the town of Penfield, county of Monroe; that defendant Corning on or about the 24th day of January, 1893, became the owner of the premises in said town consisting of 32¾ acres situate next westerly of and adjoining plaintiff's said premises; that on April 1, 1893, defendant Corning entered into a land contract by which she agreed to sell and convey said premises to defendant Peart, who thereupon went into possession pursuant to said contract, and remained in possession until April 1, 1900, at which time he removed therefrom; that "there is and has been for a great many years a natural stream of water flowing through the plaintiff's said property onto and through defendant's said property, with well-defined bed and banks, and the channel to said stream as it flows through defendant's property was and has been for over twenty years from 2½ to 3½ feet wide and 2½ to 3½ feet deep"; that "for more than twenty years said channel was of sufficient width and depth to carry the water off from plaintiff's low land, and sufficiently drained the same so as to enable the plaintiff to till and crop said low land"; that the defendant, by wrongfully and unlawfully damming and filling up and obstructing the stream, as found by the jury, caused the water to overflow plaintiff's premises to his damage in the sum of $500 by the acts of defendant Corning, and to his damage in the sum of $1 by the acts of defendant Peart; that in the year 1895 plaintiff deepened said stream by excavating rock from the bottom of the channel on the said premises of defendant Corning, by her parol consent and license, which she subsequently revoked, and she thereafter built a dam across the stream and obstructed the same more than was necessary to restore the stream to the condition in which it was before such excavation of rock. In the conclusions of law the court awarded a mandatory and permanent restraining injunction as prayed for, and damages in accordance with the verdict of the jury.

Plaintiff gave evidence tending to show, and which would have justified findings, that this creek or stream drained a water shed comprising from 1,000 to 1,600 acres of land; that the natural slope of the ground was towards defendant's premises; that, with the bed or channel of the creek through defendant's premises dammed up level with the surface of the banks, the surplus water from this water shed would flow over defendant's premises along the line of this stream, where there was a slight depression, making a natural outlet for this water shed; that for more than 50 years there has been a natural water course, with well-defined banks, through the premises of both plaintiff and defendant, which drained this water shed, and was a running stream some years throughout the season, but drying up through the premises of plaintiff and defendant for one, two, or three months most seasons; that such stream was supplied by several large living springs situate more than a mile above plaintiff's premises, one of which was never known to dry up or freeze, but the others ceased to flow in very dry seasons, and by rain and the melting of snow, and also by the water from a small tract of this water shed, consisting of low, marshy, muck lands, known as a "tamarack swamp," from which the water does not flow readily; that prior to 42 or 43 years ago, and

before anything had been done towards artificial drainage or to interfere with the natural condition of the locus in quo, these springs ran into this marshy muck ground, through which the waters found their way over the surface irregularly and in no defined channel for a long distance, and then, reaching harder soil, the flowing water came together and formed a natural channel, which extended through plaintiff's lands and those of defendant, also; that, after leaving plaintiff's lands and passing a few hundred feet through defendant's premises, the bed of the stream descended considerably and quite abruptly, so that there was a fall of more than 10 feet in 800; that in those early days, more than 50 years ago, a sawmill was erected from about a half to three-quarters of a mile below defendant's premises, which for a long period was run by water power from three to five months each year, principally supplied by the water that came through this stream, which ultimately, by natural water course, reached Lake Ontario; that in this vicinity there is a rock bottom, and on defendant's premises the rock comes within about a foot of the surface of the ground, but it is in layers, and is lower than the surface of plaintiff's premises; that about 42 or 43 years ago the owners of the low lands of this water shed, including the then owner of defendant's premises, for their mutual benefit, and to enable them to clear, improve, and till their respective premises, agreed upon a plan of cleaning out, deepening, and straightening the channel of this natural water course, from the springs referred to, to and through defendant's premises a distance of more than a mile, which plan was carried into execution by them; that the witnesses who participated in or observed such cleaning out, deepening, and straightening say nothing was done at that time along the line of this slight natural depression in defendant's premises where the bed of the stream was, except to remove the loose stone and earth, but other witnesses, from subsequent appearances, say that the surface rock was likely cracked, loose, and broken, and was removed with pickaxes or crowbars, thereby enabling the water to pass off more readily, and in a certain sense deepening the channel, and others say that the rock had the appearance of having been blasted out; that, after the doing of this work 42 or 43 years ago, the creek through plaintiff's premises was from 3½ to 4 feet wide, and about the same depth, and it was about the same width, but a foot or so less in depth, through defendant's premises; that ordinarily in the spring and fall the water flowing through this creek was between 2 and 2½ feet deep; that thereafter said channel remained in precisely the same condition, excepting as it was affected by the natural flow of water, until 1885, when plaintiff and others undertook, as stated in the findings, to deepen the channel by blasting rock from the bed of the stream; that lateral ditches emptying into this creek had been constructed upon either side so that the lands drained more readily and rapidly into the bed of this stream. The evidence fairly warranted the findings that plaintiff's crops were damaged to the extent found by the jury, and that such damage was caused by the obstructions placed in the bed of this stream. It appeared that ever since plaintiff owned the premises, a period of 33 years, he has tilled and cultivated the same lands without any previous loss or damage from the overflowing of water, and the surface of such lands was above the bed of the stream through defendant's premises, as it existed before being so obstructed.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and LAUGHLIN, JJ.

John Van Voorhis, for appellant.

George D. Reed, for respondent.

LAUGHLIN, J.    For more than 50 years, and as far back as the recollection of the oldest inhabitants extends, and before the hand of man had done anything to effect the drainage in this locality, the stream ran continuously, except for a few months in very dry seasons, through the premises now owned by the respective parties to this litigation, in the channel which defendant has obstructed, draining a very large water shed, and supplied by living springs. This

constituted a natural water course, which defendant Corning, as own-. er of the servient estate, was obligated to keep free and unobstructed for the benefit of plaintiff, the owner of the dominant estate. Gould, Waters, §§ 41, 225, 263, 264; 24 Am. & Eng. Enc. Law, 900; 14 Am. & Eng. Enc. Law, 926; Barkley v. Wilcox, 86 N. Y. 143; Jeffers v. Jeffers, 107 N. Y. 650, 14 N. E. 316; Wharton v. Stevens, 84 Iowa, 107–114, 50 N. W. 562, 15 L. R. A. 630. The only serious question that arises is with reference to the effect of the deepening of the channel through defendant's premises upward of 40 years ago. The case, however, was not tried, and has not been presented to us, upon the theory that, if a natural water course existed, its enlargement as stated was under a revocable license. The evidence on that point seems to have been brought into the case by plaintiff's counsel either incidentally or accidentally. It consists of part of the testimony given by a witness called in behalf of plaintiff on rebuttal, and appears to be uncontradicted as to the fact that defendant's predecessor in title joined in making the improvement. The property owners affected by the inadequacy of the water course to prevent the overflowing of their lands, and its insufficiency to so drain such lands as to render the same available for early tilling, formed a bee to straighten and deepen the water course for the better drainage of their lands. They determined upon a plan, and carried it into execution, for aught that appears in the record, under a claim of right, which was acquiesced in by the owner of the premises where the channel has now been closed. It is apparent that this improvement was designed to be permanent; for it is not probable that the other property owners would till and crop their low lands, leaving it optional with defendant and her predecessors in title at any time to destroy the crops by filling the bed of the stream, and thus causing the water to overflow the premises above. The enjoyment of the improved water course by the owners of the property benefited thereby, as contemplated by all parties interested, is not consistent with the right of defendant to restore the channel to its condition as it existed before being thus improved. If this were wholly an artificial ditch or channel excavated under a parol or written license intended to be perpetual, defendant would doubtless have the right to revoke the license, even though a consideration had been paid therefor. Babcock v. Utter, *40 N. Y. 397; Wiseman v. Lucksinger, 84 N. Y. 31; Cronkhite v. Cronkhite, 94 N. Y. 323; Crosdale v. Lanigan, 129 N. Y. 604, 29 N. E. 824; White v. Railway Co., 139 N. Y. 19, 34 N. E. 887. But this extreme doctrine, which, upon grounds of public policy, precludes the enforcement of the license after part or full performance, thus constituting a departure from the rule adopted by courts of equity concerning other contracts relating to real estate (Newman v. Nellis, 97 N. Y. 285; Rindge v. Baker, 57 N. Y. 209; Dempsey v. Kipp, 61 N. Y. 462; Wheeler v. Reynolds, 66 N. Y. 227; Wiseman v. Lucksinger, 84 N. Y. 31), has no application to the case at bar. Assuming, without so deciding, that this doctrine would apply to that part of the channel of the water course which is new, and did not exist prior to the improvement to which allusion has been made, it is impossible to ascertain from the record before us the precise changes that were made in the water course through defend-

ant's premises at that time.   The evidence is quite general and indefinite, and, while indicating that the channel was deepened through the rock, the court could not formulate a decree therefrom by which defendant's right of revocation could be enforced, without trenching upon the rights of other property owners to have the water course kept open and unobstructed as it originally existed.   In order to overcome the presumption of a grant and the acquisition of the right by adverse user, the burden was on defendant to show that the deepening of the channel 42 or 43 years ago was under a license from her predecessor in title.   Gould, Waters, § 341;  Hammond v. Zehner, 21 N. Y. 118;  Townsend v. McDonald, 12 N. Y. 381;  Ward v. Warren, 82 N. Y. 265;  Heiser v. Gaul, 39 App. Div. 162, 57 N. Y. Supp. 198, and cases cited;  Pierrepont v. Barnard, 6 N. Y. 285.   The defendant and her grantors having acquiesced for nearly a half of a century in the enjoyment of this improved water course by plaintiff and his predecessors in title, she cannot be permitted to close it entirely now merely on account of its having been artificially deepened and enlarged.   Vannest v. Fleming, 79 Iowa, 638, 44 N. W. 906, 8 L. R. A. 277.

It does not appear that the water course overflowed its banks on defendant's premises in consequence of the lateral ditches or drains running into the stream from the premises of plaintiff and others. Artificial lateral drains into a natural water course, although they at times increase the flow of water therein, and at other times decrease it, to the injury of those lower down the stream, with reference to the supply and use of water, are not unlawful, provided the stream is not thereby made to overflow its banks.   Waffle v. Railroad Co., 58 Barb. 421, affirmed in 53 N. Y. 11;  McCormick v. Horan, 81 N. Y. 86;  Noonan v. City of Albany, 79 N. Y. 470;  Barkley v. Wilcox, 86 N. Y. 140;  Peck v. Goodberlett, 109 N. Y. 180, 16 N. E. 350.

We find no exception which constitutes a reversible error or requires extended consideration.   It follows that the judgment appealed from should be affirmed, with costs.   All concur, except McLENNAN, J., who dissents.